UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALI KHAN, a/k/a ARSHAD ALI MALIK,<br><br>Plaintiff,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney General of the United States, et al.,<br><br>Defendants. | Civil Action No. 13-1287 (JDB) |

## MEMORANDUM OPINION

Everyone agrees that Ali Khan's last year in federal jail was a mistake. After he finished serving his original sentence, he received an additional 168 months for violating parole from an earlier offense. But under the terms of Khan's extradition from Canada, there was no authority to impose that additional sentence. Now properly released from American custody, he seeks ten million dollars in damages. Although Khan surely suffered a terrible injury, the relief he seeks is barred by the procedural and jurisdictional rules as well as Khan's failure to allege facts sufficient to state a claim for which relief can be granted. Accordingly, the Court will grant the government defendants' motion to dismiss.

## BACKGROUND

Back in 1981, Khan was sentenced to fifteen months' imprisonment and—relevant here— lifetime parole in the United States District Court for the Northern District of Illinois. See Malik v. U.S. Parole Comm'n, 2012 WL 6682128, at *1 (N.D. Ohio Dec. 21, 2012). After he served his sentence, Khan returned to his native Canada. Id.

More than twenty years later, the federal government indicted Khan in the Eastern District of Michigan. See id. Khan eventually consented to his extradition from Canada to the United States, under the terms of the extradition treaty between the two nations. See id. This meant that his surrender to the United States was "for the sole purpose of facing the charge filed against [him] in the Michigan federal case." Id. And once in Michigan, Khan pleaded guilty. Id. At sentencing, the Presentence Investigation Report ("PSR") incorrectly stated that Khan had waived, rather than consented to, extradition. See Compl. [ECF No. 1] at 9. Khan surmises that the mistake might have occurred because the Clerk of Court did not enter Khan's order of surrender on the docket until after the PSR had been completed. See id. At the time, however, neither Khan nor his attorney noticed the error, and so did not object to the PSR. See id. The Court sentenced Khan to seventy-eight months in prison. Malik, 2012 WL 6682128, at *1.

The day before Khan expected to be released, he was informed that his incarceration would continue indefinitely. See Compl. at 11. The United States Probation Office had issued a detainer, believing that Khan's conviction in the Eastern District of Michigan meant that he had violated the terms of his parole from his earlier conviction in the Northern District of Illinois. Within a few months, the United States Parole Commission held a hearing on that issue. See Malik, 2012 WL 6682128, at *1. At the hearing, according to Khan, his counsel failed to present a defense, and did not discuss the terms of Khan's extradition. See Compl. at 12. The Commission found that Khan had violated the terms of his parole and sentenced him to 168 months. See Malik, 2012 WL 6682128, at *1. Khan found this prospect emotionally devastating, "a cause of indescribable duress and . . . negative repercussions on [his] health." Compl. at 12. And he suffered further upon receiving a document indicating that his new sentence was life imprisonment. See id. at 13.

Khan filed an appeal with the Parole Commission's National Appeals Board, arguing, among other things, that the government lacked jurisdiction under the terms of his extradition. See id. The Board denied the appeal, explaining that Khan's jurisdictional argument was "unsupported by any documentation or other evidence." See Ex. M to Compl. at 90. And it pointed out that, according to the PSR, Khan had waived extradition. See id.

But Khan persisted. Finally in possession of the documents he needed to prove the circumstances of his extradition, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. See Compl. at 15–16. The government requested that the court grant Khan's petition, which it did. See Malik, 2012 WL 6682128, at *1. The court explained that the "rule of specialty prohibits the prosecution of an individual for an offense in the country that requested his extradition unless the extraditing country grants his or her extradition for that offense." See id. at *2. It found that Khan's additional sentence did not fall within the scope of his consent or the terms of the extradition treaty with Canada. Id. at *3. And so, about a year after Khan should have left prison, the court ordered Khan's release. Id.

After returning to Canada, Khan filed this lawsuit, pro se, seeking ten million dollars in damages from various defendants in connection with his wrongful imprisonment. See Compl. at 28. The government has responded[1] by filing a motion to dismiss. See Gov't's Mot. [ECF No. 19].

## LEGAL STANDARD

---

[1] The only non-federal defendants here are unknown agents of the Corrections Corporation of America ("CCA"). The CCA has not entered an appearance in this case, and the present motion to dismiss—and therefore this Opinion—does not apply to those defendants. The Court has, by separate order issued today, addressed Khan's claims as to the CCA defendants.

3

The government moves, in part, to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). As "[f]ederal courts are courts of limited jurisdiction[,] . . . [i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting" it. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). Thus, Khan must establish jurisdiction by a preponderance of the evidence. See Gordon v. Office of the Architect of the Capitol, 750 F. Supp. 2d 82, 87 (D.D.C. 2010). In making this determination, "the Court must accept as true all of the factual allegations contained in the complaint," but those facts "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 86–87 (internal quotation marks omitted). "Although a court is to construe liberally a pro se complaint, pro se plaintiffs are not freed from the requirement to plead an adequate jurisdictional basis for their claims." Kurtz v. United States, 798 F. Supp. 2d 285, 288 (D.D.C. 2011) (alteration, citations, and internal quotation marks omitted).

The government also seeks to dismiss the complaint for failure to state a claim under Rule 12(b)(6). "[A] Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint." Hall & Assocs. v. U.S. Envtl. Prot. Agency, 77 F. Supp. 3d 40, 50 (D.D.C. 2014). Although a plaintiff need not set forth "detailed factual allegations" to withstand a Rule 12(b)(6) motion, in order to establish the "grounds" of his "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); see also Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). "[T]he complaint is construed liberally in [plaintiff's] favor, and [a court should] grant plaintiff[] the

4

benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, a court need not accept inferences that are not supported by the facts alleged and legal conclusions drawn by plaintiff.  See id.; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

## ANALYSIS

Khan has sued numerous federal defendants—and it is not entirely clear from the complaint whether he means to sue them in their official capacity, in their individual capacity, the agencies they represent, or some combination thereof.  The amenability of these defendants to suit—and the Court's jurisdiction—depend on the claims Khan brings against them, the capacity in which Khan has sued them, and the way these decisions implicate federal sovereign immunity.  To impose some semblance of order, the Court will address Khan's claims in two broad categories: first, the common-law tort claims of false arrest, false imprisonment, and malicious prosecution, and then the Bivens claims for alleged constitutional violations of the rights to due process, equal protection, and freedom from cruel and unusual punishment.  See generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Khan is unable to succeed on any of his claims.

**I.  False Arrest, False Imprisonment, and Malicious Prosecution**

The Federal Tort Claims Act provides the exclusive remedy for Khan's common-law tort claims of false arrest, false imprisonment, and malicious prosecution.  United States v. Smith, 499 U.S. 160, 165–66 (1991); see also 28 U.S.C. § 2679(b)(1).  To bring an FTCA claim, the plaintiff must have "first presented the claim to the appropriate Federal agency and his claim shall have

been finally denied by the agency in writing." 28 U.S.C. § 2675(a). In other words, the plaintiff must exhaust his administrative remedies before filing suit. See McNeil v. United States, 508 U.S. 106, 113 (1993). And that requirement is jurisdictional. See Simpkins v. Dist. of Columbia Gov't, 108 F.3d 366, 371 (D.C. Cir. 1997).

Khan has not alleged that he exhausted his administrative remedies before filing this lawsuit. The only mention of exhaustion in his complaint refers to his Bivens claims, not his common-law tort claims. And Khan provides only a conclusory statement—"I have met both of these criteria [of exhaustion]," Compl. at 17—rather than facts from which the Court may conclude that he has plausibly exhausted those claims.

In his briefing, Khan goes a bit further. He states, "[a]s an aside," that he is "filing with this response a copy of all the documents which [he] had previously filed with the departments named in this suit under the Federal Tort Claim[s] Act, as well as the responses [he] ha[s] received." Pl.'s Opp'n [ECF No. 21] at 2. But no such copies appear on the docket. And in his surreply, Khan admits that he "filed [his] FTCA claims with the respective agencies which are headed by the departments shortly after [he] filed this instant action." Pl.'s Surreply [ECF No. 24] at 4 (emphasis added). Exhaustion, however, requires a final denial from the agency before filing suit—and Khan admittedly did not even begin the exhaustion process until after suing in this Court. Accordingly, he has not demonstrated that the Court has subject-matter jurisdiction over his common-law tort claims, and so the Court must dismiss them as to all of the defendants.[2]

---

[2] Khan does contend that the agencies to which he submitted claims "have constantly avoided making a decision." Pl.'s Opp'n at 2. This could be read—at a stretch—as reaching toward the statute's provision that "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of" the FTCA's exhaustion requirement. 28 U.S.C. § 2675(a). But since Khan did not even file those administrative claims before commencing this suit, he could not—and did not—allege that the final disposition occurred before he sued in federal court. See Kurtz, 798 F. Supp. 2d at 288 (holding pro se plaintiff to the requirement to plead an adequate jurisdictional basis for his claims).

The government urges other rationales on the Court: untimeliness, failure to state a claim, lack of private analog. But, having determined that the Court "lacks subject matter jurisdiction, it can proceed no further." Simpkins, 108 F.3d at 371 (holding that the district court erred by going on to consider the merits of an FTCA claim after finding that the plaintiff had not fulfilled the exhaustion requirement).

## II.  Constitutional Claims

The disposition of Khan's constitutional claims is slightly more complicated—not least because it is not entirely clear from the complaint who Khan is suing, and in what capacity. To the extent that Khan is suing the named agencies themselves, or the named individuals in their official capacities, seeking money damages, his suit for constitutional violations can go no further. See FDIC v. Meyer, 510 U.S. 471, 486 (1994) (declining to extend Bivens to federal agencies); Kim v. United States, 632 F.3d 713, 715 (D.C. Cir. 2011) ("It is well established that Bivens remedies do not exist against officials sued in their official capacities."). As to these defendants, and these claims, the Court must dismiss for lack of jurisdiction. See Meyer, 510 U.S. at 475 ("Sovereign immunity is jurisdictional in nature."); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

As to the known named defendants sued in their personal capacity—the Attorney General, the Secretary of State, the U.S. Marshal, and the director of the Federal Bureau of Prisons—the Court lacks personal jurisdiction, and must dismiss the case as to them. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." (alteration and internal quotation marks omitted)). "Before a federal court may

exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., 484 U.S. 97, 104 (1987). Bivens defendants, sued in their individual capacity, must be served as individuals pursuant to Rule 4(e). Simpkins, 108 F.3d at 369; see also Fed. R. Civ. P. 4(i)(3). That rule authorizes only personal service of the summons and complaint, leaving them at the defendant's dwelling or usual abode with a competent person, delivering them to an authorized agent, or serving process in accordance with the procedures of D.C. law. As Khan served the named defendants at their respective places of business, see Cert. of Serv. [ECF No. 4] at 1, 3, 7, 11, he has not fulfilled the requirements of Rule 4. The claims against them must therefore be dismissed for lack of personal jurisdiction. See, e.g., Auleta v. U.S. Dep't of Justice, 80 F. Supp. 3d 198, 200–01 (D.D.C. 2015) (holding that the court could not exercise personal jurisdiction over DOJ employees who were served at DOJ headquarters, without evidence that the person to whom they were delivered was an authorized agent); see also Leichtman v. Koons, 527 A.2d 745, 747 (D.C. 1987) (explaining that service at defendant's place of business did not comport with D.C.'s service requirements).

Even if Khan had properly served these defendants in their individual capacities, he would not succeed. Khan has not alleged that any of these high-level officials were personally involved in any of the decisions of which he complains.[3] But "[b]ecause vicarious liability is inapplicable to Bivens . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft, 556 U.S. at 676. In the absence of allegations regarding these defendants' personal involvement, then, the Court would in any event have been forced to dismiss the Bivens claims against them.

---

[3] At most, Khan alleges that Holder "acted . . . to deprive [him] from [his] protected due process rights." See Compl. at 23. This is a legal conclusion, not a fact from which the Court might infer such a conclusion. But even if the Court were to construe this as an appropriate factual allegation, Holder enjoys absolute prosecutorial immunity. See Imbler v. Pachtman, 424 U.S. 409, 427 (1976).

That leaves only the John Doe defendants from each of the federal agencies—defendants about whom the government has been curiously silent.  Those defendants have not, of course, been served—normally, a bar to suit.  But "[c]ourts do grant an exception to this rule for 'John Doe' defendants . . . where the otherwise unavailable identity of the defendant will eventually be made known through discovery."  Newdow v. Roberts, 603 F.3d 1002, 1010 (D.C. Cir. 2010).  The Court is doubtful that Khan would be able to determine these defendants' identities through discovery, however, as they are mentioned in only the most cursory fashion, untethered to concrete allegations.  See, e.g., Compl. at 24 ("[W]hen . . . the agents of the United States Probation Office and Parole Commission made the decision to proceed with my prosecution and further incarceration they violated my [right to equal protection]."); id. at 26 ("I am being told . . . basically by every agent that I come across, be they agents of the United States marshalls [sic], Federal Bureau of Prisons, Corrections Corporation [o]f America, United States Parole Commission or others that the protections that were guaranteed to me by the extradition treaty don't matter." (in the context of Khan's Eighth Amendment claim)); id. at 28 ("I believe that . . . agents of the Department of State, United States Parole Commission, United States Probation Office, United States Marshalls [sic] Service, Federal Bureau of Prisons and Corrections Corporation [o]f America . . . had roles that played into the cruel and unusual punishment . . . .").  But even if Khan were able to name, and then serve, these unknown defendants, he would not succeed on his claims.

The Court can first dispense with the "named unknown agents" of the State Department.  To succeed on his Bivens claims, Khan must show that these defendants' conduct was a proximate cause of his injury.  See Egervey v. Young, 366 F.3d 238, 246 (3d Cir. 2004); McLaughlin v. Alban, 775 F.2d 389, 391 (D.C. Cir. 1985).  But the role of any State Department agent was, at most, to facilitate Khan's extradition pursuant to his consent.  While such facilitation was perhaps

9

a "but for" cause of Khan's wrongful detention, it was not a proximate cause. There were simply too many intervening causes to attribute Khan's wrongful detention to any State Department agents: the erroneous PSR, the failure of Khan's attorney to notice that error, and the failure of Khan's attorney to raise a defense at the parole revocation hearing. See Compl. at 9, 12. Hence, as to the named unknown agents of the State Department, Khan has failed to state a claim, and this portion of his complaint must be dismissed.

Remaining, then, are Khan's claims against John Doe defendants from the U.S. Marshals Service, the Bureau of Prisons, the U.S. Probation Office, and the U.S. Parole Commission. Khan asserts that these defendants violated his constitutional rights to due process, to equal protection, and to be free from cruel and unusual punishment. Compl. at. 22–28. These claims, too, must be dismissed for failure to state a claim for which relief can be granted. But even if Khan has alleged sufficient facts to state any of these claims, dismissal is nonetheless proper on the basis of quasi-judicial immunity.

Khan's due process claim—"I was effectively denied . . . life and liberty when I was detained past my release date," Compl. at 22—fails because he received all the process he was due. "Due process ordinarily requires that procedures provide notice of the proposed official action and 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" Ralls Corp. v. Comm. on Foreign Inv. in U.S., 758 F.3d 296, 318 (D.C. Cir. 2014) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). Khan received such procedures: his parole was revoked after he was told that he would be facing a charge for violating his parole, Compl. at 25, and following a hearing before the U.S. Parole Commission at which Khan was represented by counsel, Compl. at 12. Khan complains that "no defense was presented to this commission," id., but it is the opportunity to rebut the government's case that is an essential component of due process, see Ralls,

758 F.3d at 318. Khan received that opportunity. His attorney's failure to alert the Commission to Khan's extradition-based defense, while an oversight with significant consequences, does not establish that any of the defendants violated his right to due process.

As for his equal protection claim, Khan asserts that he was treated differently from others who consent to extradition pursuant to the treaty with Canada because, contrary to the terms of the treaty, he was punished for an offense other than that for which extradition was granted. Compl. at 23–24. The root of this claim is the error in Khan's PSR, which stated that he had waived extradition. In order to maintain a "class of one" equal protection claim, the plaintiff must allege that he "'has been <u>intentionally</u> treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" <u>XP Vehicles, Inc. v. U.S. Dep't of Energy</u>, 2015 WL 4249167, at *23 (D.D.C. July 14, 2015) (emphasis added) (quoting <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam)). Khan, however, hypothesizes that the U.S. Probation Officer "merely assumed" that he had waived extradition "without verifying the facts thoroughly." Compl. at 9. Because his equal protection claim is based on an alleged negligent error in his PSR, the claim must fail.

Khan's Eighth Amendment claim similarly fails because he has not alleged the requisite culpable state of mind. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). And second, "a prison official must have a sufficiently culpable state of mind." <u>Id.</u> (internal quotation marks omitted). Again, Khan has generally described "neglect by the Parole Commission" as well as "neglect of the other defendants." Pl.'s Opp'n at 3; <u>see also</u> Pl.'s Surreply at 1 ("This is neglectful at the least . . . ."). Such allegations do not support a claim that these defendants behaved with

"subjective recklessness," Farmer, 511 U.S. at 839, or "maliciously and sadistically," Whitley v. Albers, 475 U.S. 312, 320 (1986).

Amongst the assertions of negligence, though, there is one allegation against the unknown agents of the Parole Commission that invokes intentionality and bad faith. Khan asserts that "the persons responsible for administration of [his] Parole Commission Appeal decided to search through any documentation they could find to locate any one piece of mistaken information they could use to keep [him] past [his] release date." Compl. at 15. This is doubtful; more likely, their search started and ended with the unobjected-to PSR. But even if Khan's assertions are correct, the unnamed parole commissioners are not amenable to suit in their individual capacities. In the D.C. Circuit, parole commissioners and probation officers are entitled to absolute quasi-judicial immunity. See Turner v. Barry, 856 F.2d 1539, 1541 (D.C. Cir. 1988) (per curiam) (holding D.C. probation officers "absolutely immune from liability for damages" in a § 1983 action alleging "errors in the investigation and preparation of presentence reports"); Jones v. Fulwood, 860 F. Supp. 2d 16, 22 (D.D.C. 2012) (holding Bivens claim against U.S. parole commissioners in their individual capacities barred by absolute quasi-judicial immunity).

The unknown agents of the Bureau of Prisons and U.S. Marshals Service are also protected by this immunity. It is widely recognized that public officials, acting within the scope of their authority, who enforce facially valid court orders are entitled to absolute quasi-judicial immunity. See, e.g., Engebreston v. Mahoney, 724 F.3d 1034, 1039 (9th Cir. 2013) ("We now join our sister circuits and hold that prison officials charged with executing facially valid court orders enjoy absolute immunity from §1983 liability for conduct prescribed by those orders."); J.P. Silverton Industries, L.P. v. Sohm, 243 F. App'x 82, 89 (6th Cir. 2007); Figg v. Russell, 433 F.3d 593, 598–600 (8th Cir. 2006); Hamilton v. Leavy, 322 F.3d 776, 782–83 (3d Cir. 2003); Mays v. Sudderth,

97 F.3d 107, 113 (5th Cir. 1996); Valdez v. City & Cnty. of Denver, 878 F.2d 1285, 1287–1290 (10th Cir. 1989); see also Francis v. Lyman, 216 F.2d 583, 588–89 (1st Cir. 1954) ("The privilege of the jailor to impose the confinement is . . . as time-honored in the Anglo-American common law as is the immunity of members of the legislature and of judges from civil liability for acts done within the sphere of their judicial activities."); Ravenscroft v. Casey, 139 F.2d 776, 778 (2d Cir. 1944) ("Whether [the judge's] orders were correct or erroneous he had jurisdiction to make them and they provide immunity to the jail authorities who did nothing other than perform them."). This rule is only fair. Any other rule would "spare the judges," or probation officers, "who give orders while punishing the officers who obey them." Valdez, 878 F.2d at 1289.

Here, Khan was taken into custody by the U.S. Marshals pursuant to a detainer issued by the U.S. Probation Office, and was further detained by agents of the Federal Bureau of Prisons pursuant to the revocation order of the U.S. Parole Commission. There is no question that these agencies had the authority to issue these orders, that the defendants had the authority to enforce the orders, and that the orders were facially valid. These officials should not "be called upon to answer for the legality of decisions which they [were] powerless to control." Valdez, 878 F.2d at 1289. Hence, Khan's constitutional claims against the unnamed agents of the U.S. Marshals Service and Bureau of Prisons fail for this reason as well.

* * * * *

In sum, the Court must dismiss the entirety of Khan's complaint as to the federal defendants for either lack of subject matter jurisdiction, lack of personal jurisdiction, or failure to state a claim. The Court is sympathetic to the mental anguish Khan experienced while fearful that he would be wrongfully imprisoned for the rest of his life. But this lawsuit cannot proceed based on sympathy alone.

## **CONCLUSION**

For the foregoing reasons, the Court will grant the government defendants' motion to dismiss. A separate Order has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: September 29, 2015